IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KIMBERLY DAY,                                2:09-CV-1261-SU

      Plaintiff,                          ORDER

v.

UNITED PARCEL SERVICE, INC.,

      Defendant.


BROWN, Judge.

    Magistrate Judge Patricia Sullivan issued Findings and
Recommendation (#58) on July 8, 2011, in which she recommended
the Court grant in part and deny in part Defendant United Parcel
Service, Inc.'s Motion (#27) for Summary Judgment.  Defendant
filed timely Objections (#60) to the Findings and Recommendation.
The matter is now before this Court pursuant to 28 U.S.C.
§ 636(b)(1) and Federal Rule of Civil Procedure 72(b).

    For the reasons that follow, the Court **ADOPTS** Magistrate
Judge Sullivan's Findings and Recommendation.

1 - ORDER

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report.  28 U.S.C. § 636(b)(1).  *See also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).  For those portions of the Findings and Recommendation to which the parties do not object, the Court is relieved of its obligation to review the record *de novo* as to this portion of the Findings and Recommendation.  *Reyna-Tapia*, 328 F.3d at 1121.

## <u>BACKGROUND</u>

On October 27, 2009, Plaintiff, formerly employed by Defendant UPS as a tractor-trailer "feeder driver," filed her Complaint in this Court seeking redress for unlawful discrimination and adverse employment actions that Defendant allegedly took against her.  In her Complaint Plaintiff asserts the following three claims against Defendant:  (1) sex discrimination on the basis of hostile work environment in violation of Oregon Revised Statute § 659A.030; (2) retaliation against Plaintiff for opposing Defendant's unlawful employment practices under Oregon Revised Statute § 659A.030(1)(f) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m); and (3) common-law wrongful discharge.  Plaintiff subsequently

2 - ORDER

withdrew her wrongful-discharge claim.

On January 31, 2011, Defendant filed its Motion for Summary Judgment as to each of Plaintiff's remaining claims.

On July 8, 2011, the Magistrate Judge issued Findings and Recommendation in which she recommends the Court grant in part and deny in part Defendant's Motion for Summary Judgment as follows:  (1) grant Defendant's Motion as to Plaintiff's claim for sex discrimination based on hostile work environment and (2) deny Defendant's Motion as to Plaintiff's claim for Defendant's unlawful retaliation against Plaintiff for engaging in protected activity.

On July 25, 2011, Defendant filed timely Objections to the Findings and Recommendation.


## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to

3 - ORDER

a material fact for trial. *Id*.

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1987)). *See also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

4 - ORDER

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*. "[W]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved through a searching inquiry—one that is most appropriately conducted by the fact-finder, upon a full record." *Schnidrig v. Columbia machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir.)(citations omitted), *cert. denied*, 519 U.S. 927 (1996).

## **DISCUSSION**

Neither party raises any objection to that portion of the Findings and Recommendation in which the Magistrate Judge recommends the Court grant Defendant's Motion as to Plaintiff's claim for sex discrimination based on a hostile work environment. The Court has reviewed the legal principles relating to that portion of the Findings and Recommendation and does not find any legal error.

Defendant, however, objects to the Magistrate Judge's recommendation to deny Defendant's Motion as to Plaintiff's claim for retaliation.

Plaintiff asserts in her Complaint that Defendant

5 - ORDER

retaliated against her for making complaints of unlawful sex discrimination that began in October 2006 and culminated in Plaintiff's filing a complaint with the Equal Employment Opportunity Commission in July 2008.  Specifically, Plaintiff alleges Defendant retaliated by suspending her from driving her route until she attended a "fitness-for-duty" examination to obtain a Department of Transportation medical certification and by finally terminating Plaintiff's employment on December 3, 2008.

## I.   Plaintiff's Claim of Retaliation.

Defendant objects to the Magistrate Judge's recommendation to deny Defendant's Motion as to Plaintiff's claim for retaliation arising from Plaintiff's complaint of unlawful sex discrimination on the following grounds:  (1) Plaintiff has not satisfied her *prima facie* burden to show a causal connection between her discrimination complaint and her alleged adverse employment actions; (2) Plaintiff has not satisfied her *prima facie* burden to show that Defendant's decision to require Plaintiff to take a "fitness-for-duty" evaluation and to obtain a DOT medical certification was an adverse employment action; and (3) Plaintiff has not provided sufficient evidence to show that Defendant's grounds for requiring Plaintiff to obtain the DOT certification and for terminating Plaintiff were pretext for retaliation.

6 - ORDER

### A.    Standards.

Under Title VII "[t]o establish a prima facie case [of retaliation], the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). *See also Manatt v. Bank of Am., NA,* 339 F.3d 792, 800 (9th Cir. 2003). Complaining about race discrimination to a supervisor is a protected activity. *Manatt*, 339 F.3d at 800 n.8. If a plaintiff has established a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. (citation omitted). If the defendant then "articulates such a reason, [the plaintiff] bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id*. (quotation omitted).

### B.    Magistrate Judge's Decision.

The Magistrate Judge found Plaintiff adequately stated a *prima facie* claim of retaliation by Defendant arising from Plaintiff's complaints of unlawful discrimination. The Magistrate Judge noted the parties did not dispute that Plaintiff had engaged in protected activity when she made complaints to her supervisor and to the EEOC of unlawful sex discrimination. The Magistrate Judge also noted the parties did not dispute

Plaintiff's termination was an adverse employment action.  The
Magistrate Judge found a rational juror could conclude
Defendant's decision to suspend Plaintiff from driving her route
and requiring her to take a "fitness-for-duty" exam and to obtain
a DOT certification "would deter reasonable employees from
complaining about title VII violations." *See Brooks v. City of
San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  In addition, the
Magistrate Judge found there were genuine disputes of material
fact as to the causation element and concluded Plaintiff made a
sufficient showing of a causal link based on the temporal
proximity between Plaintiff's discrimination complaints and the
adverse employment actions taken against Plaintiff by Defendant.
*See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065
(9th Cir. 2002) ("causation can be inferred from timing alone
where an adverse employment action follows on the heels of
protected activity," but 18 months was too long to infer
causation).  *See also Dawson*, 630 F.3d at 937.

    Finally, despite Defendant's "persuasive evidence" of
nonretaliatory bases for its actions and the Magistrate Judge's
assessment that this case presented a "close call," the
Magistrate Judge found Plaintiff provided sufficient evidence of
pretext to survive Defendant's Motion for Summary Judgment.  *See
Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987)(Summary
judgement is "generally unsuitable in Title VII cases in which

the plaintiff has established a prima facie case because of the 'elusive factual question' of intentional discrimination.") (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732 (9th Cir. 1986)).

    **C.   Analysis.**

        **1.   Plaintiff's *Prima Facie* Case:  Causal Connection.**

        Defendant objects to the Magistrate Judge's conclusion that Plaintiff demonstrated a causal link between Plaintiff's protected activity (her October 2006 complaints to her supervisor, Paul Winans, and her July 2008 complaint to the EEOC about the pervasive use of sexually explicit and discriminatory language over public radio channels in the Portland, Oregon, UPS "feeder yard") and the alleged adverse employment actions by Defendant (suspension of Plaintiff, the requirement that she obtain a DOT medical certification before permitting her to return to driving her route, and her ultimate termination). Specifically, Defendant contends the inference in favor of causation created by the timing between Plaintiff's discrimination complaints and Defendant's alleged adverse employment actions is rebutted by the fact that the decisionmaker lacked knowledge of Plaintiff's protected activity. *See Yartzoff*, 809 F.2d at 1376. Defendant argues at length that Laurie Wahlstrom, a registered nurse and UPS Occupational Health Supervisor, was solely responsible for the decision to suspend

Plaintiff from driving her route and to require a medical examination and DOT certification of Plaintiff's fitness to perform her duties and that Wahlstrom was unaware of any of Plaintiff's protected activity.  As noted, the Magistrate Judge concluded there were issues of fact that precluded summary judgment as to this element of Plaintiff's claim.

### a.  Wahlstrom's Knowledge.

Defendant maintains it is "undisputed" that Wahlstrom did not have knowledge of Plaintiff's protected conduct.  Defendant contends any inference of causation created by the short timeframe between Plaintiff's EEOC complaint and her suspension from driving her route is undermined by the lack of direct evidence that Wahlstrom was aware of Plaintiff's engagement in any protected activity.  Wahlstrom, in fact, attested she was unaware of Plaintiff's protected activity at the time she made the decision to suspend Plaintiff and to require the DOT certification.  In addition, Wahlstrom testified the decision was hers alone and was based on the report by Winans that Plaintiff had failed to call in to determine whether her shift had been covered on a day that she had requested to be absent because she had taken sleep medication and overslept.  In other words, it was solely a medical decision.

The record reflects Winans became aware of Plaintiff's EEOC complaint in early September 2008.  On

approximately September 17, 2008, Don Tefft, Human Resources
Manager, contacted Winans to investigate Plaintiff's complaints
of sex discrimination.  Winans, however, could not locate any
records of the complaint nor could he demonstrate that he had
followed up with Plaintiff about her complaints.  A few days
later on September 25, 2008, Winans orally disciplined Plaintiff
for allegedly taking a truck that was scheduled for repair
without first clearing it with the mechanic assigned to the
vehicle.  Plaintiff attested she, in fact, had obtained
permission from the mechanic and that Winans had not spoken
directly with the mechanic about the issue.  As noted, on
September 26, 2008, Plaintiff failed to call in to ensure her
shift was covered, and, according to Plaintiff, she told Winans
that she overslept due to the effects of her use of Lunesta, a
sleep aid.

        Defendant asserts Wahlstrom did not know about
Plaintiff's protected activity.  Plaintiff, however, maintained
at oral argument that the high degree of coordination between
Winans, his manager Ron Rude, and Tefft with Wahlstrom and the
Portland Division Manager, Michael Rausch is circumstantial
evidence that undermines Wahlstrom's testimony.  Although Rude,
Winans, and Tefft each had knowledge of Plaintiff's protected
activity, Wahlstrom and Rausch testified to a lack of such
knowledge.  The record is replete with emails and testimony about

11 - ORDER

communications among these individuals coordinating UPS's response to Plaintiff's complaints of sexual discrimination, her sleep and medication issues, and her attendance.  Specifically, Plaintiff points out the record contains evidence that Winans and Wahlstrom emailed each other and spoke on the telephone concerning Plaintiff during the relevant period.  In addition, Tefft and Winans shared adjacent offices in Portland during the relevant period, and the record reflects Tefft made numerous requests from Wahlstrom for documents related to Plaintiff's medical issues, which Wahlstrom attested was "unusual" and likely meant Tefft was involved in litigation.

> **b.   Cat's Paw Theory.**

In addition, Plaintiff advances a "cat's paw" theory of liability under which "Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus."  *See Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005).  Plaintiff cites *Staub v. Proctor Hospital*, the recent Supreme Court decision in which the Court elaborated on the cat's paw theory of liability in a "very similar" statutory context.  131 S. Ct. 1186, 1190-94 (2011)(assessing the cat's paw theory of liability under the Uniformed Services Employment and Reemployment Rights Act

12 - ORDER

(USERRA), 38 U.S.C. § 4301, *et seq*., and expressly recognizing
the similarity in application to Title VII's assessment of the
"motivating factors" behind an employer's practices).  In *Staub*
the plaintiff alleged the discriminatory animus of a supervisor
influenced an unbiased decisionmaker to terminate the plaintiff.
*Id*.  The Supreme Court held:

> Animus and responsibility for the adverse
> action can both be attributed to the earlier
> agent (here, Staub's supervisors) if the
> adverse action is the intended consequence of
> that agent's discriminatory conduct.  So long
> as the agent intends, for discriminatory
> reasons, that the adverse action occur, he
> has the scienter required to be liable under
> USERRA.  And it is axiomatic under tort law
> that the exercise of judgment by the
> decisionmaker does not prevent the earlier
> agent's action (and hence the earlier agent's
> discriminatory animus) from being the
> proximate cause of the harm.  Proximate cause
> requires only "some direct relation between
> the injury asserted and the injurious conduct
> alleged," and excludes only those "link[s]
> that are too remote, purely contingent, or
> indirect."  *Hemi Group, LLC v. City of New
> York*, 559 U.S. 1, ___, 130 S. Ct. 983, 989,
> 175 L. Ed. 2d 943 (2010)(internal quotation
> marks omitted).  We do not think that the
> ultimate decisionmaker's exercise of judgment
> automatically renders the link to the
> supervisor's bias "remote" or "purely
> contingent."  The decisionmaker's exercise of
> judgment is also a proximate cause of the
> employment decision, but it is common for
> injuries to have multiple proximate causes.
>
> * * *
>
> Moreover, the approach urged upon us by
> Proctor gives an unlikely meaning to a
> provision designed to prevent employer
> discrimination.  An employer's authority to

reward, punish, or dismiss is often allocated
among multiple agents.  The one who makes the
ultimate decision does so on the basis of
performance assessments by other supervisors.
Proctor's view would have the improbable
consequence that if an employer isolates a
personnel official from an employee's
supervisors, vests the decision to take
adverse employment actions in that official,
and asks that official to review the
employee's personnel file before taking the
adverse action, then the employer will be
effectively shielded from discriminatory acts
and recommendations of supervisors that were
designed and intended to produce the adverse
action. That seems to us an implausible
meaning of the text, and one that is not
compelled by its words.

                    * * *

But the supervisor's biased report may remain
a causal factor if the independent investi-
gation takes it into account without
determining that the adverse action was,
apart from the supervisor's recommendation,
entirely justified.  We are aware of no
principle in tort or agency law under which
an employer's mere conduct of an independent
investigation has a claim-preclusive effect.
Nor do we think the independent investigation
somehow relieves the employer of "fault."
The employer is at fault because one of its
agents committed an action based on
discriminatory animus that was intended to
cause, and did in fact cause, an adverse
employment decision.

*Id*. at 1192-93 (footnote omitted).

        On the basis of *Staub*, Plaintiff contends even if

Wahlstrom was unaware of Plaintiff's protected activity, Winans's

retaliatory intent was reflected in his reports to Wahlstrom and

was a "motivating factor" in Wahlstrom's decision to suspend

14 - ORDER

Plaintiff and to require her to obtain a new DOT medical certification. Specifically, Plaintiff contends Winans magnified Plaintiff's "sleep issues" when he reported them to Wahlstrom and others in order to retaliate against Plaintiff and to keep her from being able to drive for UPS. Plaintiff points to Winans's notes of his conversation with Plaintiff, which reflect Plaintiff stated her sleep issues included driving her UPS route while drowsy. Plaintiff testified she did not make that statement and that Winans's report to Wahlstrom and others was a motivating factor in her suspension in light of a recent accident involving a UPS truck driver who fell asleep at the wheel that had created heightened concern over drowsiness. Indeed, in a letter written by Wahlstrom on November 4, 2008, to a physician who was to perform Plaintiff's fitness-for-duty examination, Wahlstrom stated Plaintiff's use of prescription sleep aids made her drowsy while operating her UPS vehicle. Although Wahlstrom attested she did not know where or from whom she got that information, the record reflects Winans was the source of that information.

On this record the Court finds Plaintiff has provided sufficient evidence of a causal connection based on the inference created by the temporal proximity between her protected activity and the adverse employment actions taken by Defendant. Moreover, Plaintiff has provided sufficient circumstantial evidence to rebut Defendant's attempt to undermine that inference by showing

15 - ORDER

that Wahlstrom, the decisionmaker, may have had knowledge of Plaintiff's protected activity.  In any event, Plaintiff has also provided sufficient evidence to make a *prima facie* case of causation based on the cat's paw theory under *Staub*.  The Court, therefore, concludes Defendant's Objection is not a sufficient basis to modify the Findings and Recommendation.

### 2.  Plaintiff's *Prima Facie* Case:  Adverse Employment Action.

As noted, Defendant objects to the Magistrate Judge's conclusion that the decision to suspend Plaintiff, to require her to take a "fitness-for-duty" examination, and to require her to obtain a DOT medical certification constitutes an adverse employment action.  Specifically, Defendant maintains the adverse employment action must be taken by one with knowledge of the protected activity in order to be an adverse employment action.  That argument, however, is squarely rejected by the Supreme Court in *Staub.*  131 S. Ct. at 1392-93.  Defendant also asserts even thought the "driving while drowsy" statement appeared in Wahlstrom's letter dated November 4, 2008, it was not in her original letter dated October 1, 2008, that explained the nature of Plaintiff's need for DOT recertification.  According to Defendant, this fact shows Wahlstrom made the decision free from any of Winans's biased statements.  The Court, however, must view the facts in the light most favorable to Plaintiff, and on this record there is a permissible inference that one of the proximate

16 - ORDER

causes of Wahlstrom's decision was the allegedly fabricated report by Winans.

Defendant also emphasizes the process for requiring a UPS employee to be recertified on the basis of a medical condition is permitted under the collective bargaining agreement with its union employees.  The Court notes, however, that even though the collective bargaining agreement likely authorizes progressive discipline and termination under certain circumstances, such authorization would not preclude their characterization as an adverse employment action.  Ultimately the action must be measured from an objective standard:  whether it would deter "reasonable employees from complaining about Title VII violations." *Brooks*, 229 F.3d at 928.  The record reflects Wahlstrom's decision resulted in Plaintiff being unable to drive her route, being forced to accept work at a lower position to receive pay, being required to have a medical examination, and being required to obtain a certification she already had before being able to return to her position.

In addition, Plaintiff contends the recertification policy was unevenly enforced.  Plaintiff points out that Wahlstom had been made aware of Plaintiff's use of sleep aids in 2006 when Plaintiff requested accommodation for a regular work schedule to permit her to get necessary rest.  Wahlstrom did not require Plaintiff to undergo a DOT recertification at that time.

Plaintiff also adduced evidence from Winans that Defendant did not take similar actions when Winans reported a different driver had struggled with drowsiness while driving.

Accordingly, the Court agrees with the Magistrate Judge that Plaintiff has produced sufficient evidence that a rational juror could conclude Defendant's action would deter reasonable employees from making discrimination complaints.  Thus, the Court concludes Defendant's Objection is not a basis to modify or to reject the Magistrate Judge's Findings and Recommendation.

### 3.   Evidence of Pretext.

Defendant also objects to the Findings and Recommendation on the ground that Plaintiff did not provide sufficient evidence to support her contention that Defendant's reasons for taking adverse employment actions against Plaintiff were pretext for retaliation.  Under the Title VII *McDonnell-Douglas* burden-shifting framework, after a plaintiff has made a *prima facie* showing of retaliation and a defendant has proffered a legitimate, nonretaliatory basis for its actions, the plaintiff must show retaliation was more than likely the defendant's motivation or that the defendant's proffered explanation is not entitled to credence.  See *Cornwell v. Electra Cent. Cred. Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  *See also Harris v. Pameco Corp.,* 170 Or. App. 164, 178-79 (2000)(applies Title VII standard to retaliation claims under Oregon law).

18 - ORDER

            a.    **DOT recertification.**

          Defendant maintains Wahlstrom's basis for ordering

Plaintiff to undergo a DOT recertification was solely in response

to Plaintiff's oversleeping and on Wahlstrom's concern about

Plaintiff's medical issues surrounding her use of sleep aids.

Defendant emphasizes it was concerned for the safety of its

drivers and the public because of a recent drowsiness-related

accident and contends it ordered other employees to undergo

similar DOT recertifications.

          The Court, however, agrees with the Magistrate

Judge that a rational juror could reasonably conclude Defendant

was more likely motivated by retaliation or that its reasons are

not entitled to credence based on (1) shifting descriptions and

fabrication of the severity of Plaintiff's "sleep issues," (2)

Winans's unwarranted oral discipline of Plaintiff, and (3) the

uneven application of the DOT recertification policy with respect

to Plaintiff and other employees.

          In addition, Plaintiff asserts when she went to

the first appointment made by Defendant to obtain her fitness-

for-duty examination on October 2, 2008, the receptionist at the

physician's office stated Plaintiff did not have an appointment

and could see a physician at a different health facility a few

blocks away.  Plaintiff was examined at the other facility by a

physician who was approved under the Collective Bargaining

19 – ORDER

Agreement as a generally acceptable source of DOT certification
examinations, and Plaintiff obtained a DOT certification from
that physician.  On her return to work, however, Defendant was
unwilling to accept that certification on the ground that
Wahlstrom had written a letter on October 1, 2008, to the
physicians at Defendant's chosen facility requesting them to
address Plaintiff's sleep issues and medication in the
examination.  According to Wahlstrom, the physician who examined
Plaintiff stated he was not aware of those issues.  Plaintiff,
however, disputes that fact and attested she told the examining
physician about her use of Lunesta.  In any event, Plaintiff
argues she complied with Defendant's policy and Defendant's
insistence that Plaintiff attend an examination at its chosen
health facility evinces Defendant's intent to control the outcome
of the examination.  Plaintiff emphasizes Wahlstrom attested she
had a good working relationship with the health facility that
Defendant selected for Plaintiff's examination.

        Although Defendant set up Plaintiff with multiple
additional appointments to have another fitness-for-duty
examination, Plaintiff did not follow through with those
appointments.  Defendant ultimately fired Plaintiff.

        **b.    Termination.**

        Defendant maintains its decision to terminate
Plaintiff's employment was based on her repeated failure to

attend the "fitness-for-duty" examination and to obtain her DOT
medical certification in accordance with Defendant's multiple
requests.

        The Court notes Plaintiff's termination was the
result of her unwillingness to attend a second fitness-for-duty
examination, and, to the extent the original decision to require
such an exam was tainted by the bias of Winans or others, the
ultimate result is causally linked to any such bias.  Thus,
Plaintiff's failure to comply with Defendant's requests to follow
through with the DOT recertification may well have been pretext
for retaliation on the same grounds as set out above.

        In addition, Plaintiff points to a late September
2008 set of emails between Winans; Rude; and Rausch, the Portland
Division Manager.  Rausch attested he forwarded an email to John
Monahan, the Hermiston Manager, concerning late arrivals by
drivers out of the Hermiston, Oregon, hub where Plaintiff worked.
Winans responded to Rausch by stating there were discrepancies
between the schedules in Portland and Hermiston that seemed to be
the source of the problem.  Winans also stated:  "Please let me
know what you need done, at this point I do not have anything to
hold [Plaintiff] accountable for except that she took 10 minutes
[*sic*] meal on the way to Portland last night but she still
arrived within her scheduled inbound time."  Rausch attested he
did not have an intent or reason to single out Plaintiff for

discipline and was not trying to hold her accountable for
anything.  At oral argument, Defendant provided a lengthy
explanation as to the context of this email, but the Court must
view this communication in the light most favorable to Plaintiff:
*i.e.*, it was sent during the initial portion of the internal
investigation of Plaintiff's EEOC complaint, it was near the time
Winans disciplined Plaintiff for the use of a truck allegedly
without mechanic approval, it was near the time Winans
characterized Plaintiff's sleep issues as "driving while drowsy,"
and the email singles out Plaintiff among the numerous drivers
who worked out of the Hermiston hub.

        On this record the Court agrees with the Magistrate
Judge that a rational juror could conclude Defendant's proffered
explanations for the adverse employment actions it took against
Plaintiff were pretext for retaliation.

    In summary, the Court has performed a *de novo* review of the
record in relation to each of the Objections raised by Defendant.
The Court agrees with the Magistrate Judge that the decision to
deny Defendant's Motion as to Plaintiff's retaliation claim is a
very close call, particularly as to Defendant's reasons for
deciding to suspend and to terminate Plaintiff.  Nevertheless,
the Court concludes on this record that none of Defendant's
Objections provide a basis to modify the Magistrate Judge's
Findings and Recommendation.

22 - ORDER

## CONCLUSION

Accordingly, the Court **ADOPTS** Magistrate Judge Sullivan's Findings and Recommendation (#58). Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant UPS's Motion (#27) for Summary Judgment as follows:

1.  **GRANTS** Defendant's Motion as to Plaintiff's claim for unlawful sex discrimination on the basis of hostile work environment and

2.  **DENIES** Defendant's Motion as to Plaintiff's claims for unlawful retaliation.

IT IS SO ORDERED.

DATED this 1st day of November, 2011.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

23 - ORDER